**INTERNATIONAL JAI–ALAI PLAYERS ASSOCIATION, U.A.W., LOCAL 8868, AFL–CIO, Plaintiff,**

v.

**ARAGON GROUP, INC., Summersport Enterprises, Ltd., d/b/a Dania Jai–Alai, Defendant.**

No. 95–6998–CIV.

United States District Court, S.D. Florida.

Oct. 22, 1997.

Richard Paul Siwica, Orlando, FL, for Plaintiff.

Rodolfo Gomez, Coral Gables, FL, for Defendant.

**ORDER GRANTING DEFENDANT'S MO-TION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDG-MENT**

NESBITT, District Judge.

This cause comes before the Court upon Defendant's Motion for Summary Judgment, filed January 17, 1997 (D.E.# 28), and Plaintiff's Cross–Motion for Summary Judgment, filed February 14, 1997 (D.E.# 36). After careful consideration of the motions and the entire record, the Court will grant Defendant's Motion for Summary Judgment (D.E.# 28), and deny Plaintiff's Cross–Motion for Summary Judgment (D.E.# 36) for the reasons set forth below.

### BACKGROUND

This action involves a suit to vacate an arbitrator's decision. The Court has subject matter jurisdiction pursuant to Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185.[1]

On December 27, 1995 (D.E.# 6), Plaintiff filed its Amended Complaint. According to the Amended Complaint, Plaintiff (hereinafter the "Union") is an unincorporated labor organization, and Defendant (hereinafter "Dania") operates a jai-alai fronton in Dania, Florida. The Union is the authorized bargaining representative for Dania's jai-alai players at the Dania fronton. Jose Lopez

---

1. 29 U.S.C. § 185(a) provides, in part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Goicochea (hereinafter "Goico") was a jai-alai player at the Dania fronton.

In April of 1988, jai-alai players throughout Florida, including Goico and others employed by Dania, commenced a strike which lasted two and one-half years. In October of 1990, the Union entered into a collective bargaining agreement and a settlement agreement (hereinafter the "Agreement") with Dania and other jai-alai frontons. The Agreement provided for the return of striking players.

Section 6b of the Agreement provided:

Players who are "out of status" ... will be offered playing contracts if they obtain the necessary visas and work authorizations, obtain the required medical clearances, and demonstrate ability to play ... all within the period of six (6) months from and after the effective date of this Agreement.[2]

....

Notwithstanding anything else contained in this Agreement, if a former striker is at any time given a player contract ... so that a visa and/or work authorization can properly be applied for, it is agreed and understood that the player will nevertheless be subject to all pre-conditions contained in this Agreement with regard to medical clearance, demonstrating ability to play competitively, time considerations, and limits etc. before he will actually be entitled to play jai alai and/or be paid salary or other compensation or benefits.

Pretrial Stipulation (D.E.# 33) at 7.

The parties' collective bargaining agreement signed in October of 1990, contained two Articles relevant to individual player contracts. Those Articles provided:

#### ARTICLE VII *INDIVIDUAL PLAYER CONTRACTS*

*Section 1.* It is understood and agreed that Dania will continue to use and require individual player contracts with the players it employs, and it shall be free to negotiate directly with the player with regard to these contracts, so long as it does not enter into any individual player contracts which contain terms or conditions which are in-

consistent with terms or conditions contained in this Agreement.

....

#### ARTICLE XX *DISCIPLINARY ACTIONS, TERMINATIONS OF AND DURING TERMS OF PLAYING CONTRACTS*

*Section 1.* Dania agrees that disciplinary action taken against a player during the term of the player's individual playing contract will be for just cause....

*Id.* at 8–9.

On January 31, 1991, Goico signed an individual player contract with Dania for the summer jai-alai season which commenced on May 3, 1991. Provision 8 of Goico's player's contract stated that: "[t]he Company may terminate this contract, without notice at its election upon the happening of the following events: ... c) In case the Player for any cause shall be unable to timely report for his duties under this contract." Defendant's Motion for Summary Judgment (hereinafter "Motion") (D.E.# 28), Ex. 3 at 8.

Goico is a foreign national who resided in Spain and therefore was required to obtain a visa in order to work in the United States. On February 1, 1991, the Union's Executive Vice President requested that Dania's President file a visa application for Goico and send a copy of the application to the Union's immigration attorney, Ira Kurzban. On February 14, 1991, Dania's President advised the Union's Executive Vice President that Goico's application had been filed on February 1, 1991, and that a copy of that application had been sent to Ira Kurzban.

On February 26, 1991, Dania advised Goico that the Immigration and Naturalization Service had approved Goico's visa, and that Goico was to contact the American Embassy in Madrid to arrange to pick up the visa when it arrived. This information was also conveyed to Ira Kurzban. The Union and Goico acknowledged that they received Dania's February 26, 1991 letter.

Despite the fact that the jai-alai season began on May 3, 1991, Goico did not report

---

2. The parties have stipulated that this six-month time limitation expired in April of 1991. *See*

Pretrial Stipulation, at 7 n. 3.

**1466**

to the fronton until either May 6 or May 7, 1991. When Goico arrived, he was informed that his player's contract was no longer valid because he had not reported on or before April 24, 1991, as Goico's individual player contract required. Dania maintained that Goico had failed to comply with the portion of his player's contract which stated that the Company could terminate his contract without notice if, for any cause, Goico was unable to timely report for his duties under the contract. Additionally, Dania argued that Goico violated Section 6(b) of the Agreement when he failed to demonstrate ability to play within six months of the effective date of the Agreement.

The Union filed a labor grievance challenging the propriety of Goico's discharge under the Agreement. Specifically, Plaintiff argues that the Agreement provided that disciplinary actions could be taken against a player only for "just cause" and that Goico was discharged for insufficient cause. *See* Motion, Ex. 2 at 7.

Arbitrator Arvid Anderson (hereinafter the "arbitrator") conducted a hearing on Goico's grievance, and on July 25, 1995, the arbitrator issued his decision.[3] The arbitrator upheld the termination of Goico's employment based upon Goico's failure to timely report, as required by his individual player contract. Additionally, the arbitrator determined that the terms of Goico's contract "satisfied the just cause requirement." Arbitrator's decision at 12.

In the Amended Complaint, the Union contends that the arbitrator exceeded his authority because he only considered the player's contract, and not whether there was "just cause" for Goico's termination as required by the Agreement. Additionally, the Union contends that the arbitrator made a finding of fact—that Goico failed to inform the fronton that he would not report on time—which had no support in the record.

### SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(c). The movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts which show a genuine issue for trial." Fed.R.Civ.P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The Court is not to resolve factual issues, but may only determine whether factual issues exist. A material fact is one which "might affect the outcome of the suit under the governing law...." *Id.* at 248, 106 S.Ct. at 2510. Therefore, the inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

### DISCUSSION

■ The Supreme Court has made it clear that courts play only a limited role when reviewing the decisions of an arbitrator. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987); *Interstate Brands Corp. v. Local 441 Retail, Wholesale and Dept. Store Union, AFL–CIO,* 39 F.3d

**3.** A copy of the Arbitrator's decision was attached as Exhibit B to the Amended Complaint and will be referred to herein as the Arbitrator's decision.

1159, 1161 (11th Cir.1994). The Supreme Court recognizes that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards." *Misco*, 484 U.S. at 36, 108 S.Ct. at 370. As the parties have agreed to submit the question of contract interpretation to an arbitrator, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.* at 37–38, 108 S.Ct. at 370.

■ Accordingly, a court may not reconsider the merits of an award merely because "the award rests on errors of fact or on a misinterpretation of the contract." *Interstate Brands Corp.*, 39 F.3d at 1162. Instead, a court may vacate an award only "[w]here the award does not draw its essence from the contract, but rather reflects the arbitrator's 'own brand of industrial justice,' . . . ." *Id.* (quoting *Misco*, 484 U.S. at 36, 108 S.Ct. at 369). To resolve disputes, an arbitrator must make a finding on both factual issues and matters of contractual interpretation. Courts should not reverse an arbitrator's honest judgment with respect to either factual determinations or contractual interpretation. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38, 108 S.Ct. at 371.

■ The Union contends that the arbitrator erred by subordinating the requirements of the Agreement to the terms of Goico's player contract, and failed to determine whether Goico's dismissal for failure to timely report constituted a dismissal for just cause. The arbitrator in this case specifically found that the Agreement and the player's contract were entered into at the same time. As such, the arbitrator determined that both agreements established the conditions of reemployment, and should be read together. As discussed above, an arbitrator's finding of fact should not be overturned merely because this Court disagrees with his factual finding. *Misco*, 484 U.S. at 38, 108 S.Ct. at 371. The

Court has no authority to usurp the parties decision to have this issue resolved by an arbitrator. *Id.* Thus, accepting as true the arbitrator's factual finding that both agreements are to be considered together, his decision that Goico's violation of the player's contract gave Dania just cause to terminate Goico's employment should not be overturned.

■ Plaintiff counters this argument by pointing out that the Agreement stated that players contracts must not "contain terms or conditions which are inconsistent with terms or conditions contained in this Agreement." Motion, Ex. 2 at 7–8. As such, Plaintiff maintains that the player's contract provision allowing Dania to terminate Goico's employment if for "any cause" he did not timely appear for the commencement of the jai-alai season conflicts with the Agreement's provision that Dania could not fire Goico without "just cause". Accordingly, the Union argues that the arbitrator should have "subordinated the 'just cause' requirement of the arbitration agreement to the any cause provision of the player's contract." Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Resp.") (D.E.# 36) at 7.

Plaintiff is correct that at page 10 of the arbitrator's decision, the arbitrator "explicitly refused to find that the 'just cause' provision of the Article XX of the collective bargaining agreement superseded the provision of the player contract which allowed the fronton to terminate a player for 'any cause' upon his failure to timely report for his duties." Resp. at 14; *see also* Arbitrator's decision, at 10.[4] However, the arbitrator specifically found that the provision in the player's contract which authorized the player's termination "satisfied the just cause requirement" in the Agreement. See Arbitrator's decision at 11. Therefore, the arbitrator did not, as Plaintiff suggests, "subordinate[ ] the 'just cause' requirement of the arbitration agreement to the any cause provision of the player's contract." Resp. at 7.

4. This is because the arbitrator decided that both the Agreement and the player's contract should be read together, *supra* at 11.

■ Next, Plaintiff contends that the arbitrator gave only "lip service" to the traditional seven step "just cause" analysis. *See id*, at 8. Plaintiff also maintains that to the extent that the arbitrator applied these seven tests, he concluded that Dania had just cause because Goico failed to contact Dania to advise them that he would not be able to report on time.

Upon a review of the arbitrator's decision, when read in context, the Court finds that the arbitrator properly recognized the pertinent issues and reached the correct conclusions. At page 6 of his decision, the arbitrator framed the issue as: "[w]hether the Company had just cause to terminate the grievant for failure to arrive at the Fronton on May 3, 1991." On page 8 of his decision, the arbitrator recognized that the Union asserted that the standards of just cause had not been met, and listed the seven standards for proving just cause. *See* Arbitrator's decision at 8.

Although the arbitrator found that "all of the tests [were not] directly applicable in this situation ...," he analyzed several of the factors.[5] *Id.* at 11. The arbitrator found "that both the Union and Goico had notice of the delays in the obtaining of the visa·....," and that "the language of the contracts [were] quite clear as to the notice requirements." *Id.* Further, the arbitrator found that "the Union and Goico knew that the players were on notice to report on time and the consequences for not reporting." *Id.*

Based upon his consideration of several of the factors, the arbitrator found that "the contract provisions [providing for termination of an employee that failed to report] satisfied the just cause requirement." *Id.* at 12. As previous case law indicates, "whether the moving party is right or wrong is a question of contract ·interpretation for the arbitrator ...," and not for the Court. *Misco*, 484 U.S.

at 36–37, 108 S.Ct. at 370; *see Interstate Brands*, 39 F.3d at 1161.

■ Next, Plaintiff contends that this Court should vacate the arbitrator's decision because there is no factual support for his decision that Goico did not notify Dania that he was having difficulty obtaining his visa. Plaintiff is correct that although the Court may not vacate arbitration awards for factual errors, "if an examination of the record before the arbitrator reveals no support whatever for his determination, his award must be vacated." *Storer Broadcasting Co. v. AF-TRA*, 600 F.2d 45 (6th Cir.1979) (citations omitted)

Plaintiff contends that there was no factual support for the arbitrator's finding that Goico failed. to notify Dania prior to April 26, 1991 that he would be unable to timely report. Plaintiff bases this contention solely on fact that the union's immigration attorney wrote Dania three days before Goico was supposed to report asking "whether [Dania] ha[d] received an approval or denial from the Regional Service Center" for Goico. *See* Resp. at 16.

The arbitrator concluded that this letter did not provide evidence that Goico informed them in advance that he would not timely report. *See* Arbitrator's decision at 10–11. The arbitrator made a factual finding based upon the evidence before him. Therefore, the Court may not vacate the arbitrator's award.

■ Finally, Plaintiff argues that the arbitrator incorrectly interpreted Section 6(b) of the Agreement. Plaintiff maintains that the 6(b) requirements (which included the requirement that Goico had to demonstrate ability to play) were merely preconditions for being offered a playing contract. As Goico had already been offered a player's contract before the six month period had expired,

---

5. With regards to the second factor, reasonable rule of order, the arbitrator found that "[t]here [was] no question that it [was] important for [Dania] to have the players' roster firmly established on a timely basis; and that players [we]re to report about a week before the start of the season." *Id.* at 10. As to the sixth factor,· equality of treatment, the arbitrator found that Goico's employer "would have rehired Goico if he had reported on time [,] ... [and found that] the

record shows that all other strikers, who wished to return and met the contract conditions, were rehired." *Id.* Additionally, the arbitrator found that Goico did not contact Dania in a timely fashion to request permission to report late, and "that while certain exceptions have been given for employees reporting late, they had always contacted the Employer in advance to notify the company of possible delays...." *Id.* at 10 & 11.

Plaintiff claims that he had already met the 6(b) requirements. Thus, the arbitrator's application of this section to Goico was not substantiated by the Agreement.

The Court finds that Plaintiff is narrowly interpreting the Agreement. At the end of Section 6 it also states that "it is agreed and understood that [a] player will nevertheless be subject to all pre-conditions contained in this Agreement with regard to medical clearance, demonstrating ability to play competitively, time considerations and limits, etc. before he will actually be entitled to play jai-alai...." Pretrial Stipulation (D.E.# 33) at 7. Therefore, this Court finds that the arbitrator interpreted the Agreement to require that Goico comply with the established time considerations before he was entitled to play jai-alai. The arbitrator did not "ignore the plain language of" the Agreement or mete out his "own brand of industrial justice"; rather, he determined that the requirement in the player's contract satisfied the just cause requirement outlined in the contract. *Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71; *Interstate Brands,* 39 F.3d at 1162. As the arbitrator's decision was a matter of contract interpretation which is supported by the record, this Court has no authority to overrule that decision. *See Misco,* 484 U.S. at 36, 108 S.Ct. at 369.

### CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion for Summary Judgment, filed January 17, 1997 (D.E.# 28) is **GRANTED,** and Plaintiff's Cross–Motion for Summary Judgment, filed February 14, 1997 (D.E.# 36), is **DENIED.** A separate final judgment will be entered this day in favor of Defendant, and against Plaintiff.